## The Sheffield-King Milling Company, Appellant, v. Edward S. Emerson, Appellee.

### Gen. No. 5,182.

JUDGMENTS, DECREES AND EXECUTIONS—*when property not subject to levy and sale.* Held, under the evidence, that there was no such delivery of merchandise to the defendant in the execution as would authorize a levy upon and a sale of such merchandise.

Assumpsit. Appeal from the County Court of Grundy county; the Hon. GEORGE W. HUSTON, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed October 19, 1909.

CORNELIUS REARDON and EINER HOIDALE, for appellant.

JOHN G. PETTEYS, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The principal question which arises upon the record in this case is whether there was such a delivery of sixty sacks of flour of the agreed value of $87.75 by the Sheffield-King Milling Company, appellant, to George T. Coulahan as would subject it to a levy and sale by Edward S. Emerson, appellee, a constable, under an execution in favor of Sweet-Orr & Co. against George T. Coulahan. The facts shown by the record are that for several years prior to 1908, George T. Coulahan had been in the grocery business at Minooka, Illinois, and in the early part of that year his place was destroyed by fire. For a time after that he took orders

for flour and other goods, and sent to wholesale dealers for the goods and delivered them to his customers. On August 17, 1908, he wrote to appellant at Minneapolis requesting the sale to him of fifteen barrels of flour. His request was answered by appellant forwarding to him through the mail one of their printed form orders which he was requested to sign and return. He signed the order and returned it by mail. The terms of the purchase according to the order were cash on arrival of draft with bill of lading attached. The consignment of flour was shipped August 25, 1908, from Faribault, Minn., to Minooka, Illinois, consigned by appellant to itself, and the bill of lading with draft attached was sent to the Exchange Bank at Minooka, which was a private bank, managed by Mr. Colleps. The freight was prepaid to Minooka by appellant, and the bill of lading contained the clause "Notify G. T. Coulahan." The flour arrived at Minooka the last of August. Coulahan at that time was in straightened circumstances, and judgments had been recovered against him by various creditors, among them Sweet-Orr & Co., who had recovered a judgment for $137.70. When Coulahan learned that the bill of lading had been sent to the bank with the draft attached, he wrote to the appellant at Minneapolis on September 2nd, that if it did not let him have the flour on thirty days' time he would not take it. Thereupon, on September 3rd, appellant wrote to the Minooka bank, through its Minneapolis banker, to deliver the bill of lading to Coulahan and return the draft.

Edward S. Emerson, a constable, on the 5th of September, levied on the flour under an execution in favor of Sweet-Orr & Co., against Coulahan, and sold it on September 19, 1908. Appellant brought this suit in assumpsit to recover the value of the flour. The case was tried in the County Court without a jury and judgment rendered in favor of Emerson.

Appellant contends that there was no delivery of the flour, either actual or symbolical, to Coulahan, and therefore the title was still in appellant. The proof

shows that the flour arrived at Minooka on the C., R. I. & P. Ry. and remained in its depot for some days; that after some correspondence between appellant and Coulahan the bill of lading was delivered by the bank to an employe of the railroad company. It is upon such delivery of the bill of lading to the employe of the railroad company that appellee relies for establishing the title of the property in Coulahan and thereby subjecting it to levy under the execution in favor of Sweet-Orr & Co. Appellant urges that the title to the property would not pass by delivery of the bill of lading to the railroad company, and that it could exercise the right of stoppage *in transitu.* The evidence fails to show any effort on the part of appellant to exercise such right. Coulahan had endeavored to notify appellant of the seizure of the flour, but corresponded with the Illinois representative of appellant, who had no permanent location, and did not write appellant direct until September 17th, but the letter was not received by appellant in time to replevin the flour before the sale. The Exchange Bank was going out of business, and desired to get the bill of lading out of its possession. The flour was on a truck at the railway depot, and D. H. Andrews, the agent of the railway, being anxious to get the flour out of the way, notified Coulahan several times that the flour was there, but Coulahan paid no attention to the notice. On the evening of September 4th, the agent sent his son, Garnett Andrews, who was his assistant, to notify Coulahan to take the flour away. On the morning of September 5th, D. H. Andrews, the agent of the railway, sent the assistant agent, his son, to the Exchange Bank and it delivered the bill of lading to the assistant agent; thereupon appellee levied the execution on the flour, shipped it to Morris and there sold it under the execution. Garnett Andrews testified in behalf of appellee that on the night of September 4th, he notified Coulahan the flour was there and asked him for the bill of lading, but does not say what if any answer Coulahan made to him. He further testified that the next morn-

ing his father sent him to the bank for the bill of lading, and that no other person ever told him to go and get the bill of lading. Immediately after testifying as above, he was asked: "Was there anybody that said anything to you about getting this bill of lading the night before you got it?" He answered, "Yes, sir." Question: "Who was it that said it to you?" Answer: "Mr. Coulahan." Question: "What did he say?" To this question, although proper as a part of the *res gestae,* the court sustained an objection. If the answer that no person except the railway agent told him to get the bill of lading was true, he would have answered the question to which an objection was sustained by saying Coulahan told him not to interfere with it or not to get it.

Coulahan testified that he never received the flour nor the bill of lading, and that no person acting for him ever received the bill of lading.

Neither the flour nor the bill of lading was ever delivered to Coulahan, and he, so far as is shown by the evidence, never authorized any person to receive either of them for him. The flour having been shipped by appellant to itself, the carrier was the agent of appellant. The bill of lading was sent by appellant to the bank as its agent. Until there was either a delivery of the flour to Coulahan or of the bill of lading to Coulahan or some authorized agent of his to receive it there was no transfer of the property that would make it liable to a levy under an execution against Coulahan.

It results, therefore, that the title to the flour not having passed to Coulahan, the execution was not a lien thereon and the levy was unauthorized. Therefore the judgment must be reversed and the cause remanded.

*Reversed and remanded.*